J-S14008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE LOGAN | : | |
| | : | |
| Appellant | : | No. 1319 EDA 2017 |
| | : | |

Appeal from the PCRA Order April 4, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000052-2013

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY OTT, J.:                         **FILED JUNE 05, 2018**

Andre Logan appeals, *pro se*,[1] from the order entered on April 4, 2017, in the Court of Common Pleas of Philadelphia County, denying him relief, without a hearing, on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. In this timely appeal, Logan raises five claims, although he argues only two.[2]  In turn, both of these argued claims

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Logan's appointed counsel filed a **Turner/Finley** no merit letter with the PCRA court and was released from representing Logan.

[2] The five questions presented are generic.  They are:

> 1. Is Appellant eligible for relief under the [PCRA] due to his conviction and sentence resulting from ineffective assistance of counsel?

are essentially the same claim that trial counsel improperly coerced him into pleading guilty. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

Before we address the specifics of this appeal, we relate the underlying facts of the crimes to which Logan pled guilty, to wit: third degree murder, conspiracy to commit murder, possession of an instrument of crime, violation of the Uniform Firearms Act, and reckless endangerment.[3] Those facts were recited by Assistant District Attorney Peter Lim, Esq., at the guilty plea hearing held on February 3, 2014, as follows.

_____

2. Was defense ineffective according to 42 Pa.C.S. § 9543(a)(2)(ii)? "Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.["]

3. Was defense counsel ineffective according to 42 Pa.C.S. § 9543(a)(2)(iii)? "A plea of guilty was unlawfully induced where circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent."

4. Was defense counsel ineffective according to 42 Pa.C.S. § 9543(a)(2)(vii)? The imposition of sentence in greater than the lawful maximum."

5. Is Appellant eligible for relief under PCRA (a) since litigated or waived [sic], and (b) the allegation(s) of error(s) have resulted in the conviction or affirmation of sentence of a[n] innocent person?

Appellant's Brief, Statement of Questions Presented, at 3-4.

[3] 18 Pa.C.S. §§ 2502(c), 903, 907(a), 6106, 6108, and 2705, respectively.

Mr. Lim: On May 7 of 2012, at approximately 4:00 in the late afternoon, the defendant, Andre Logan, as well as another person, Michael Dingle, date of birth is November 3, 1995, conspired to kill 18 year-old Robert Alder Sneed, III, at the 1900 block of Kinsey Street, which is in the 15th police district in the city and county of Philadelphia.

At approximately 4:00 in the afternoon, [Logan] saw [Sneed] standing on the corner of Kinsey Street and Tackawanna.

[Logan], as well as [Sneed] had an on-going dispute.

[Logan] walked past [Sneed] and met up with his co-defendant, [Dingle].

The two spoke for a brief moment and entered a mall alleyway about 100 yards from the scene of the murder.

In that alleyway, the two conversed for a brief moment. And at the conclusion of that conversation, [Logan] went towards that intersection and confronted the victim, [Sneed].

[Sneed] was present at the corner with his girl friend, friend or acquaintance, Liesst, L-i-e-s-s-t, Norta, N-o-r-t-a. And also standing in that area was a witness, Edward Hale, or Edward Dark.

At that time, [Logan] confronted [Sneed] because [Logan] heard that [Sneed] was threatening or telling people in the neighborhood that he was going to kill [Logan].

The two had a very loud verbal dispute. And, at that time, [Dingle] approached from the alley, put a hoody over his head, walked up from behind [Logan] grabbed a Taurus .380 caliber handgun from [Logan's] waist and shot [Sneed] in the chest.

[Dingle] stood over top and shot [Sneed] multiple times in the back before [Dingle] ran past a store, past the alleyway and to an apartment at 2035 Orthodox Street.

[Logan] walked away from [Sneed's] body and went to 2035 Orthodox Street. That apartment is approximately three blocks away.

[Dingle] and [Logan] met on the third floor of that apartment. [Logan] took the Taurus .380 from [Dingle] and remained in the apartment while [Dingle] jumped out the back window and fled.

As this is happening, 15th District police officers, based on a tip that they received on police radio, went into 2035 Orthodox Street to secure the scene.

There they found [Logan] on the third floor of that apartment. They also found the firearm on top of a closet and secured it.

That firearm was submitted to the criminalistics laboratory. And on the trigger and back strap of the gun [Dingle's] DNA was present; and on the magazine [Logan's] and [Dingle's] DNA was present.

May 8, 2012, at approximately 1:00 in the morning, [Logan] in the presence of Detective Venson, as well as Detective Schmidt, provided a statement.

In that statement, he said exactly what I told the Court, and identified [Dingle] as the one who killed [Sneed].

If the medical examiner were to testify, Dr. Martin Osbourne, he would testify that he is an expert in the area of forensic pathology, he examined the body of [Sneed], and determined the cause of death to be multiple gunshot wounds; and the manner of death to be homicide.

N.T. Guilty Plea, 2/3/2014, at 45-49.

In addition to the factual history as related above, the trial judge, the Honorable Sandy L.V. Byrd, provided Logan definitions of all the crimes subject to the plea agreement. Especially relevant to this appeal, Judge Byrd defined conspiracy. *See id.*, at 42-45.

Finally, the written memorandum of agreement regarding the guilty plea, as found in the certified record, states that Logan will not be allowed to

withdraw his guilty plea if he fails to fulfill his terms of the agreement,[4] or if the court declined to follow any recommendation, motion or stipulation by ADA Lim or the District Attorney. **See** Memorandum of Agreement, 2/3/2014, at ¶¶ 13, 14. The memorandum also asserts that Logan had disclosed all his criminal activity associated with the murder of Sneed, and that if any additional criminal activity was discovered, he could be prosecuted for those crimes and/or the District Attorney may void the agreement, and any and all statements made by Logan in contemplation of the agreement and any evidence derived therefrom, would be used against him. **See id.**, at ¶ 15.

In his *pro se* brief submitted to this Court, Logan now asserts trial counsel failed to adequately research his defense which would have demonstrated Logan was innocent of the crimes he pled guilty to. Logan asserts Dingle acted independently and, essentially, snuck up behind him, took his gun without his knowledge, and then murdered Sneed. Based on these allegations, Logan claims trial counsel was ineffective for failing to investigate his defense and then coercing him into pleading guilty while telling Logan he would receive a 7½ to 15 year sentence.[5] Ultimately, Logan seeks to withdraw his guilty plea and go to trial.

Our review of the certified record confirms the PCRA court's conclusion that Logan's claims are without merit. The notes of testimony from the guilty

---

[4] Logan agreed to testify against Dingle.

[5] Logan received a sentence of 15-30 years' incarceration.

plea colloquy reveal that Logan was afforded a thorough explanation of his rights, N.T. Guilty Plea, 2/3/2014, 7-25, the elements of the crimes he was pleading to, *id*., at 26-30; 35-45, and the factual basis for those crimes. *Id.,* at 45-49. Logan denied he had been pressured into pleading guilty or that his counsel had made him any promises not of record. *Id.*, at 34. Logan knew what constituted a conspiracy and admitted he and Dingle had, in fact, conspired to kill Sneed. *Id.* at 42-45, 53-54. Further, Logan stated that he understood that there was no agreed upon sentence and that imposition of the sentence was solely a judicial determination. *Id.* at 24-25.

> A defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statement made when he pled.

*Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012).[6]

Because the record supports the PCRA court's determination that Logan's guilty plea was knowing, intelligent and voluntary, and that trial

---

[6] Judge Byrd conducted a thorough guilty plea colloquy and took care to explain all facets of the plea to Logan. As demonstrated, Logan's current arguments are 180 degrees opposite from Logan's sworn statements at the guilty plea hearing.

Logan now claims his counsel told him to lie to the trial court, and deny that any sentence agreement existed. Logan claims counsel told him the trial court would get angry and impose a life sentence if he did not deny the existence of a sentencing agreement. *See* Appellant's Brief, at 12, 17-18. As noted above, a defendant cannot obtain relief by claiming he lied at the hearing.

counsel did not coerce Logan into entering the guilty plea by making false promises, Logan is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/18